Good morning. May it please the Court, I'm Daniel Kapp and I represent the appellant Kurt Havelock. I'm going to attempt to watch the clock and reserve three minutes of my time for rebuttal. Kurt Havelock was punished for speech. This is something which automatically raises the hackles of the First Amendment, and they are not lowered unless and until the government comes forward with a compelling justification for punishing someone for speech. The only justification the government has ever attempted to identify in this case is that Kurt's speech constituted a true threat. However, that justification simply doesn't fit the facts in this case. In the Planned Parenthood on Bank decision, this Court identified the basis for the justification of repressing speech on the basis of it being a true threat as follows. Threats are outside the First Amendment to protect individuals from the disruption that fear engenders and from the possibility that the threatened violence will occur. It's also established in this Court's case law that the speaker's intent to convey a threat that creates those harms is essential to the existence of a true threat, which falls outside of the protection of the First Amendment. In assessing on independent review, as explained in Planned Parenthood, whether speech constituted a true threat and was not protected, it's appropriate to look at the undisputed facts, and these facts were undisputed in this case. Number one, Kurt's intent was to commit, quote, suicide by cop, close quote, minutes after mailing the documents which are the basis for these charges. The evidence was quite extensive on this. He sent letters asking that his body be cremated. He sent letters. Doesn't suicide by cop, to use that sort of popular phrase, necessarily imply that the person is going to be killed by the police because they are attempting to kill or injure someone else? That was his intention. Well, but part and parcel of that is attempting to do violence to others so that you will in turn be killed. So it carries with it the necessary implication that there's going to be an attempt on his part to hurt somebody or kill them. Yes. And he was not charged with attempt. He was not charged with murder. He was charged with a threat. He was charged only in the end, only for putting speech in the mail. Well, what I'm having difficulty with is your argument that because his intention was to do violence to someone else and then get killed, that that somehow isn't threatening, as threatening as someone who says, I'm going to do violence to someone else and I hope I get away with it. Why is that any less threatening? Because, Your Honor, his intention was that when anyone read or heard about his manifesto, this speech that he was charged for sending in the mail, for putting in the mail, he would be dead and his death would be a story that would be part of the story of his manifesto. No one can be threatened by someone they know is dead. No one can fear imminent harm from someone they know is deceased. But that presupposes that somehow someone just reads it and comes to his house and kills him. But when you talk about suicide by cop, I guess I just don't follow why it isn't a true threat if someone says, I'm going to go out and kill someone and I hope the cops kill me, and you'll find out all my thoughts in the world once all that unfolds, versus the person who says, well, ah, I'm going to go out and kill the same person, but I'm going to run away. Why is that? I just don't understand why that's less threatening. Well, let me try to explain the reason. I think you're suggesting you're describing a scenario where someone conveys the message in real time. Someone is talking to someone else and says, I'm going to go out and kill someone. I'm going to come to your house and kill you. And by the way, I hope the cops kill me or I expect the cops to kill me. That would be entirely different because the listener, the audience, is going to be put in fear of imminent harm from the speaker because the speaker is alive and the speaker is in a position to harm them. Well, did any of the communications of which he was convicted say that he was going to try to commit suicide by a cop? They didn't use that phrase. What did they say? They said, I'm going to talk to God. They said, please cremate my body. They said, I'll be dead when you read this. Please give my employment benefits to my fiancee. The government, in its opening argument, said that. See, the question, I think, if I understood Judge Graber's point, it's that if there's a threat that he's going to go to the Super Bowl and start shooting people, that would be a threat to another, and it would be a true threat to another, but maybe he didn't say that in the communications. If he took a loudspeaker and stood outside the Super Bowl arena and said, instead of taking speech and sticking it in a mailbox on a Sunday, if he had gone outside the Super Bowl arena with a bullhorn and said, I'm going to shoot people at this event. I'm going to slay the blood of, you know, et cetera, et cetera. If he'd said those things in that fashion in real time to listeners who were in a position to fear him, this would be an utterly different case. I absolutely agree with that. He put speech in a mailbox on a Sunday. The testimony was clear, and it's clear that everyone understands that no one's going to get that speech, no one's going to read any of those things until days afterwards. He was going to be dead minutes after he stuck those things in the mailbox. And just like in the Virginia Tech case of Sang Hui Cho, where anyone who read about that person's manifesto was reading about it in a story about the deadly events that occurred right after he mailed it to NBC News, nobody was put in fear of Sang Hui Cho when they read about the statements in his manifesto. But this guy was alive. This guy was what? Alive. Sang Hui Cho was alive when he mailed his manifesto, too, but he was dead minutes later. Your client was still alive when people received these. That's because he changed his mind and didn't do it. The question was his intent when he put the statements in the mailbox. That's what creates the offense here, and that's what allows it to be outside the protection of the First Amendment, was it mailed with the intent to put people in apprehension of imminent bodily harm from him. And the intent here was that no one was going to read these statements, read about these because he was going to commit this act and be killed by the cops minutes after he stuck it in the mailbox. It happened to be on a Sunday, but it wouldn't even matter because the mail wasn't going to be delivered and opened by anyone until long after the case, even if it were a weekday. That's really the crux of this case. The threat would have been executed and completed before anybody got the mail. Correct. So everybody got the mail. Nothing had happened. And so your position is therefore there is no threat? Because what matters for the purpose of there being a threat was what was his intent when he took those statements and placed them in the mailbox. His intent, his entire outlook changed, thankfully, soon after he put those things in the mailbox. But his intent when he put them in the mailbox, the witness was not disputed at trial. The prosecutor in his opening statement said that Kurt expected to be killed when he started shooting into the crowd at the Super Bowl. This was not disputed. His intent was that he was sending out a message that would be read only by people who would simultaneously know when they read it that the person who made these statements was dead. They would not feel threatened. Let's talk a little bit about who he was sending these to. Is there any question that they were persons? Yes. That's an interpretive issue which has also been raised and made in this case that they weren't persons under the statute, and therefore the statute on its plain language doesn't apply here. Counsel, the Dictionary Act defines person to include a corporate entity. So that's kind of the presumption or going in presumption of statutory construction. And I wonder about the result of the argument that you're making. If someone could basically insulate themselves from prosecution for a true threat by the way they address the envelope. So you could send something, let's go back to Planned Parenthood, you could send something to Planned Parenthood, Inc., and the threat could say, the inside would say, next Tuesday I'm going to hunt down Dr. X and Nurse Y and shoot them, and that's what's inside. So in your view, that's not a threat because the outside of the envelope is addressed to a corporate entity. Is that really what you think Congress meant? No. It's not a question of whether it was or wasn't a threat. It's a question of whether it was or wasn't a threat. Addressed to a person. I'm sorry. I understood your argument to me to be that because it's addressed to the New York Times or the other entities, that that's not addressed to a person, no matter what the inside of it says. Correct. But it's not a question of whether the threat is addressed to a person under the statutory plain language. I understand that. But that's exactly why I gave you the example, because if your reading is correct, the actual addressee on the outside of the envelope has to be an individual person. Is that what you're saying? Correct. Because that's how Congress wrote the statute. Okay. Well, you really think that's what they had in mind, to go back to my example, that you could insulate yourself from prosecution no matter how clear the threat is if you just have the good sense to address the envelope to a corporation? There's a good reason for Congress to have focused on the communication that is under the statute, the piece of mail matter, being literally addressed to a person. And here's the answer. Here's the reason why. That makes more sense than making a turn on whether the communication, the letter or whatever it is that's inside the mail, piece of mail, is addressed to another person. And that is this. It can be extremely complex and rather subtle to try to figure out to whom a communication, a letter or other statement, is, quote, addressed to. You might get into a very dodgy question of trying to figure out whether it may literally be directed to one person, but maybe the statements are meant to be viewed by another person or meant to be read by another person. There — it would be opening the door to a lot of abuses and a lot of lack of clarity and possible constitutional vagueness for the statute to be turning upon who the communication inside is in some other sense or another addressed to. Congress made things simple and clear by saying this is a piece of mail matter. It's to be delivered by the Postal Service. It has an address on it. It has to be addressed to another person. That was the choice Congress made. And there may be arguments that there are policy reasons why Congress could have made a different choice. There may be flaws in the statute that Congress might want to iron out if they perceive a problem there. But the law says that if the language of the statute is plain and clear, the Court's only basis, only job is to enforce it by its plain terms unless that is served. Well, I guess that maybe this was kind of buried in an earlier question, but the Dictionary Act tells us that when we interpret statutes in the ordinary course, we are to interpret the word person to include corporate entities. Why isn't that something that we should also follow when we're looking at the text of the statute? The Dictionary Act must take second place to the context of the statute itself. And the context of the statute here, as the Brownfield Court said and the district court here agreed, cannot be interpreted as allowing person to apply to a corporate entity or institution because it talks about causing bodily injury or injury to the person. That doesn't make any sense when applied to a corporation or an entity like the New York Times. I'd like to reserve the balance of my time for rebuttal. You certainly may do that. And I'll hear from the government. Good morning, Your Honors. Michael Morrissey from the District of Arizona. The Planned Parenthood case and so many of the cases relied on by the defense deal with the reasonable speaker test, just like United States v. Roy, United States v. Hanna. That objective standard is a completely different source of law than the 876 cases. This Court has found, United States v. Twine, that 876 is a specific intent statute. And so the government had to prove the defendant's specific intent to threaten. And so it is the government's position that much of defendant's authority in dealing with a completely separate branch of the law, the objective test and threats against the President, simply will not bear upon this case and that this Court will decide this case based on its 876 jurisprudence. But does specific intent really help you? Because, I mean, a good part of his argument is, well, my whole plan was to be dead by the time any of this stuff was read. Specific intent is both necessary and crucial to me. Defendant said within hours of mailing the letters that he told his fiancée, I sent threatening letters. That's a quote. Those were his words. He said to his mother within hours in front of his father, I sent threatening letters, Mom. The jury was entitled to credit that as a very good piece of evidence as to what his actual specific intent was. So it was both the government's burden and to prove a trial and the fact that the defendant made specific admissions as to his specific intent. Of course, he doesn't get the same instruction when he makes those admissions that the jury gets when they are told what a threat is. Well, if I understand the Court's question — Well, it wasn't really a question, I guess. Okay. Not fair to — Then let me try to argue something. I guess what I'm saying, of course, is that why should we assume that he's using a legal definition when he says I sent threatening letters? Oh, because, Judge, in United States v. Sutcliffe, this Court found that ordinary citizens can understand the meaning of threat to injure and threat to kidnap. And for that purpose, Mr. Havlock is just an ordinary citizen who happened to make a threat. Threat is not a particularly difficult concept for somebody to understand. And so there's no need or reason based on this record to believe that he didn't understand when he said I sent threatening letters repeatedly to his mother and fiance. There's no reason to think he didn't understand what a threat was. He knew exactly what a threat was. The fact that the defense has said that it was undisputed what his intent was and — I suppose one thing he could be thinking is that now that I'm alive and have changed my mind, I've got a lot of threats out there because I was threatening to create this huge scene at the Super Bowl. Well, he might have taken the witness stand and presented that to the jury, that interpretation, but — but he didn't. And this was starkly presented to the jury. There was no hiding the ball in this case. The government said this was a threatening letter sent with intent to threaten, and the defense said, no, you shouldn't look at it that way. It was retrospective. And the jury had that choice to make. There was certainly sufficient evidence based on the actual letters, based on his conduct in driving to the Super Bowl with 180 rounds of ammunition and the AR-15 and sitting there getting ready to shoot people, and his admissions. There was certainly sufficient evidence for the jury to find that it was, in fact, a subjective intent to threaten. If he had mailed those letters and then been killed in a car crash on the way to the Super Bowl, it wouldn't have mattered. He still — because at the time he mailed the letters, he had that intent to threaten, and the district court properly focused on when he had the intent to threaten. And the letters talk about future action. I will slay your children. I will take as many with me. I will shoot. I will cause all this mayhem. It was future looking and forward looking. So the intent to threaten was separate from the intent to murder. Is a threat effective upon dispatch or is it effective upon receipt? Oh, it's very clear that it's upon dispatch under 876. And that protects the defendant because this Court, I believe, will use the subjective intent to threaten standard. He had a defense, if it had been available to him, of mental defect, voluntary intoxication, something like that. He — the government met the highest burden it could meet here. But it is true that having mailed those letters with that intent to threaten, that the bell could not be unrung. Maybe what he's doing is just simply describing what took place on Super Bowl Day. So in that sense, it's not a threat. He's just describing what happened. I killed all these folks and I had hoped to get killed myself. But, Judge, that is a type of alternate reality that he doesn't get to argue. Because that's — since that's not what happened, he — he mailed the letters. That's what he intended then. And is that what we should be looking at? If this Court found that there was not sufficient evidence of his intent to threaten at the time he mailed the letters, then the government would — would have a difficulty here, yes. But — I'm not looking at it that way. I'm looking at this just as his describing in these letters what happened. The people will get it the day after the Super Bowl. And if he hadn't changed his mind, it would be quite an accurate reflection. But that's — Judge, I think the whole point of the threat, he couldn't have been describing what happened for two reasons. One, because it didn't happen. To just contrast this to Mr. Cho, Mr. Cho's manifesto appears to be all historical. Mr. Havelock's threats were future threats. And so the jury was entitled to credit that. The defense has repeatedly argued that the district court didn't make the finding that this was a true threat. But, in fact, the district court stated several times, both in its pretrial order and in the record at trial, that it found, as a matter of law, that there was sufficient evidence — as a matter of law, the jury can find it is a threat. In the government's presentation of this case, what was — in their theory, who was threatened? Persons attending and in the vicinity of the Super Bowl. The best example of who those natural persons were, for one thing, it's in the letters themselves. It talks about the people in the expensive suites at the Super Bowl, that there should be T-shirts, I survived the Super Bowl. But defendants' statement that night to the police about why he didn't do it, I realized that those people, you know, they're innocent. And he was — that's Exhibit 67. And he was — Well, that was the testimony of the girlfriend, too, or the fiancée, that he had said, I've threatened innocent people. I've threatened a lot of innocent people. Or I said they threat to innocent people or something like that. That's right, Your Honor. And in Virginia v. Black, in defining what is a true threat, the Court talked about — Justice O'Connor talked about that those true threats are serious expressions of an intent to commit an act of unlawful violence to a particular individual or group of individuals. Counsel, would you also address the argument that the addressee, because the statute talks about threats to injure the addressee or another person, and whether the addressee has to be a natural person? Yes, Your Honor. First, the statute talks about any communication containing a threat to injure. So communication comes before addressee. And I think that's the key there. Well, it modifies communication. Any communication with or without a name or designating mark subscribed thereto addressed to any other person and containing any threat, et cetera. So the communication has to be addressed to any other person. And one way to read that is not addressed to yourself. I mean, if you are sending an email to self, don't forget to kill Joe next week. It's not covered. Yes, I would agree. My only comment is we start here with the communication. The communication was mailed through the United States mails and it did include a threat to kill natural persons. I understand that addressed to persons, you have to go inside the envelope because the envelopes themselves were addressed to the New York Times and various media organizations. So I agree with the Court, but I think that both the district court's reasoning on this was quite solid as to why it was not following United States v. Brownfield and the district court's adoption of United States v. Williams, the Tenth Circuit case that fleshed through these issues, was also sound logically and as a matter of interpretation of the statute that the intent of Congress in this statute was to protect against the United States mails being used to send these types of threats. That protects... To persons? I'm sorry, Judge? To persons. I mean... Yes. But this... No question. The threat must be addressed to natural persons and that's not really an issue here whether or not it was natural persons who were in his sites. He talked about the group of people who he knew he was innocent. That's why he didn't shoot them. I was thinking the communication. Address to any other person modifies communication. Well, but communication precedes that. So it's the communication, it's the mailing, and the meaning of... I think we're at the meaning of address and that's what... I guess there are two interpretive points. Your way of looking at it is that when it talks about addressed, it's talking about the threat. Who is this for in the ultimate sense? Or you could look at addressed being literally what does the address on the outside of the envelope say? And I think it was kind of like the Gettysburg Address. I mean, there's a normal meaning to the word address. Old statute. That's an interesting thought. So I think that there is a natural and normal reading of this. All right. You talk about anybody who drops a communication in the U.S. mail addressed to... I would think... I mean, the natural reading of that is what's on the envelope, it seems to me. I don't know why you're fighting so hard with it because I don't see that that really destroys your argument if addressed means the address on the outside of the envelope. Well, I think I'm fighting for that because I have to show that natural persons were threatened, that that was his intent. That's right. But they are threatened by the actual content of the communication inside, which is, in your argument, the content of the communication contains a true threat. That's part one. Yes. And part two is you have to show that the communication was addressed to another person and not just something kept in his diary. And the question is whether those two things have to be the same or whether they mean something different. I think the Court has said it more artfully than I have said it and that I agree with the Court's position that if it's in the contents inside the envelope that there is a threat addressed to natural persons, then what's on the outside of the envelope is not the significant determiner of whether or not the United States mails have been used to mail a threat to natural persons. It's significant. What's really significant, I guess, in your view, is the word another. That is, it's not to yourself. You've actually intended to communicate it. Absolutely. Yes. But to win that argument, I guess you have to say that person used twice in the same sentence in the first instance does not refer to a natural person and the second instance does refer to a natural person. Judge, I think it's natural person without, throughout the statute. Well, if it's addressed to the New York Times and you look on the cover, then you don't have a natural person. Your argument is you don't look on the outside. The outside doesn't matter as long as it's not yourself. Correct. I see I'm out of time. May I just say one sentence to Judge Campbell? If the Court's interpretation of address is address only refers to what's on the outside of the envelope, that is a difficulty for the government. The government is urging this Court, consistent with United States v. Williams, not to adopt that reading. But you go to the root of the district court and just say you can look at the whole thing. Is that what you're saying? Yes. Thank you. Thank you. Mr. Kaplan, you have some rebuttal time remaining. Thank you, Your Honor. The government refers to Curt's statements. I sent threatening letters. I certainly agree with Judge Campbell's observation that there's no indication from the record that Curt said that as a matter of First Amendment doctrine. The government says what's a threat is not a difficult concept, but the definition of what, for the First Amendment purposes, takes speech outside of the protection of the First Amendment because it's considered a true threat is not that simple and not something we can expect laypeople to understand and incorporate into their use of a term. Now, the government and I are fully in agreement on this crucial question of, as Judge Canby put it, is the threat effective upon dispatch? And we both agree that it is. We both agree that the intent that makes something a true threat and punishable is the intent at the time the person takes speech and puts it into the stream of United States mail. So we agree that that is the point in time we must take to look at whether this was a threat or not. In light of that agreement, I'm confused by the fact that the government talks about an alternate reality being somehow not something somehow something that pertains upon this and the fact that what happened afterwards because it didn't happen doesn't pertain to this. They use the fact that Mr. Havelock remained alive after he put these things in the mail as showing that he could be threatening. But the only intent that matters is the intent when he put those statements into the mail. The fact that he changed his mind, as we all agree, is a wonderful thing and remained alive afterwards doesn't change what his intent was when he put those statements in the mail and it was never disputed here and still has not been disputed as of this moment that his intent was that the readers of his manifesto would understand that the person who made those statements which in other contexts if made to a person in real time and not placed in the mail to be read after the person's death would be deemed threatening but in that context that he intended were not intended to cause anyone to feel threatened to feel imminent harm from the speaker. There was a question about the government said the government was asked who was threatened and the government's response was people at the Super Bowl. Again, people at the Super Bowl ceased to exist after at the point at which this speech would have been read by anyone. Not at the point of dispatch. I thought you started by saying you agree that the time to view the threat is at the time of dispatch. Exactly. And the Super Bowl had not occurred yet so there would be people at the Super Bowl. But if you intend for people at the Super Bowl to read your statement the one way you can guarantee that will not happen is by putting it into the mailbox after the Super Bowl has started. Wait, wait, wait. Is it your position that the person whose life is threatened has to be the one who reads it? No. It doesn't say threats to another so if the editor of the New York Times reads it and it says I'm going to kill all the people at the Super Bowl and it hasn't happened yet that's still good, right? That's not my position. My position is if the people who supposedly are the ones being threatened are going to disappear that they're not going to be people at the Super Bowl by the time anyone reads the statement. It's clear that those people are not going to receive a message at a time when they can feel threatened. And it's even more clear when you look at the fact that his intent was again, that the people who received this message who heard these statements, who read about them would know the speaker was dead and could not hurt them. That really is, again, the crux of that part of the argument. In terms of the interpretive point I think there's a key point to understand that the statute refers to a communication that contains a threat. Now if you take a letter and stick it into a mailbox it will not be delivered because it's not a piece of mail matter. The statute, when you look at the statements in context defines a communication as a piece of mail matter. A piece of mail matter contains an address in the context of the statute the word address is not the address that Mark Antony makes in Julius Caesar it's not an address that President Lincoln makes at Gettysburg it's an address that causes mail matter to be delivered by the United States Postal Service and you must look at the context to understand how words are used before you turn to dictionaries before you turn to the Dictionary Act the context will show you Congress' intent. Thank you, counsel. We appreciate very much the arguments of both counsel it's been a very interesting argument and the case just argued is submitted. We'll hear one more case before taking a break just so if you're on one of the later cases you'll be aware of that. Our next argued case is United States v. Lillard I'm not sure I pronounced that right but Good morning.
judges: Fletcher B. , Canby, Graber